**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HISCOX INSURANCE COMPANY, INC., : | CIVIL ACTION No.: |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| KAREN NICHOLSON a/k/a KAREN SUE : | |
| NICHOLSON, KAREN SUE REYNOLDS, : | |
| KAREN S. FELLER, KAREN SUE : | |
| FELLER, KAREN S. LONG; MARKXX : | |
| CONSULTING, LLC; URBAN AFFAIRS : | |
| COALITION; ARUN PRABHAKARAN; : | |
| SHARMAIN MATLOCK-TURNER; and : | |
| KEVIN SATTERTHWAITE, : | |
| : | |
| Defendants. : | |

## COMPLAINT FOR  DECLARATORY JUDGMENT

Plaintiff Hiscox Insurance Company, Inc., by and through its undersigned counsel,

Kennedys CMK, LLP, as and for its Complaint for Declaratory Judgment, states as follows:

### JURISDICTION AND VENUE

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and

Rule 57 of the Federal Rules of Civil Procedure.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as

this action is between citizens of different states and the amount in controversy exceeds

$75,000.

3.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391(b) as a

substantial part of the events giving rise to this claim occurred in the Eastern District of

Pennsylvania, some of the Defendants are located in the Eastern District of Pennsylvania, and

all Defendants are subject to personal jurisdiction in the Eastern District of Pennsylvania.

1

**THE PARTIES**

4.      Plaintiff Hiscox Insurance Company, Inc. ("Hiscox") is a corporation organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.

5.      Hiscox is a citizen of the State of Illinois.

6.      Upon information and belief, Defendant Karen Nicholson a/k/a Karen Sue Nicholson, Karen Sue Reynolds, Karen S. Feller, Karen Sue Feller, Karen S. Long ("Nicholson") is an adult individual who is domiciled at 2729 Burton Street, SE, Warren, Ohio 44484.

7.      Upon information and belief, Defendant Nicholson is a citizen of the State of Ohio.

8.      Upon information and belief, Defendant MarkXX Consulting LLC ("MarkXX Consulting") is a limited liability company with its principal place of business located at 2729 Burton Street SE, Warren, Ohio 44484.

9.      Upon information and belief, MarkXX Consulting's members are citizens of Ohio.

10.      Upon information and belief, Defendant Urban Affairs Coalition ("UAC") is a Philadelphia, PA 501(c)(3) with its principal place of business located in Philadelphia, Pennsylvania.

11.      Upon information and belief, Defendant UAC is a citizen of the Commonwealth of Pennsylvania.

12.      Upon information and belief, Defendant Arun Prabhakaran is an adult individual who is domiciled in Philadelphia, Pennsylvania.

13.      Upon information and belief, Defendant Arun Prabhakaran ("Prabhakaran") is a citizen of the Commonwealth of Pennsylvania.

14.      Upon information and belief, Defendant Sharmain Matlock-Turner is an adult

individual who is domiciled in Philadelphia, Pennsylvania.

15. Upon information and belief, Defendant Sharmain Matlock-Turner ("Matlock-Turner") is a citizen of the Commonwealth of Pennsylvania.

16. Upon information and belief, Defendant Kevin Satterthwaite is an adult individual who is domiciled in New Jersey.

17. Upon information and belief, Defendant Kevin Satterthwaite ("Satterthwaite") is a citizen of the State of New Jersey.

## NATURE OF THE ACTION

18. This is a Complaint for a Declaratory Judgment pursuant to 28 U.S.C. § 2201, in which Hiscox seeks a determination concerning the rights, duties, and obligations of Hiscox under an insurance policy issued to MarkXX Consulting.

19. Hiscox issued Professional Liability – US Direct Errors and Omissions Policy No. P103.617.605.1 to MarkXX Consulting LLC for the policy period of July 9, 2024 through July 9, 2025 with a Retroactive Date of March 1, 2020 ("Policy").  A true and correct certified copy of the Policy is attached hereto as Exhibit A.

20. MarkXX Consulting is the only named insured on the Policy.  *See* Exhibit A, HISCOX_000008.

21. Nicholson qualifies as an insured under the Policy only to the extent Nicholson is an "employee" of MarkXX Consulting and performing "professional services" on behalf of or at the direction of MarkXX Consulting.

22. Coverage under the Policy is subject to certain terms, conditions, limitations, exclusions and endorsements, as set forth therein.

23. Nicholson is named as a defendant in an action captioned *Urban Affairs Coalition, et al. v. Karen Nicholson, et al.*, No. 2:25-cv-02261-JFM, pending in this Court ("Underlying Action").  A true and correct copy of the operative complaint, the second

amended complaint, filed in the Underlying Action ("Underlying Complaint") is attached hereto as Exhibit B.[1]

24.     Hiscox was providing a defense to Nicholson in connection with the Underlying Complaint until Hiscox withdrew its defense and disclaimed coverage on April 14, 2026.  A true and correct copy of the April 14, 2026 disclaimer letter is attached hereto as Exhibit C.

25.     Hiscox seeks a determination that it does not have a duty to defend or a duty to indemnify Nicholson in connection with the Underlying Action for the causes of action asserted against her based on certain terms, conditions, definitions, and exclusions of the Policy.

## STATEMENT OF FACTS

### A.     The Hiscox Policy

26.     The Insuring Agreement of the Policy provides as follows:

> **I.     INSURING AGREEMENT, DEFENSE AND SETTLEMENT**
>
> **A.     INSURING AGREEMENT**
>
> > **We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and  reported to **Us** pursuant  to the terms of  the  Policy for **Wrongful Acts** committed  on  or  after  the **Retroactive Date**.
> >
> > **We** shall also pay on **Your** behalf all **Supplemental Payments** in connection with any covered **Claim** that is first made against **You** during  the  **Policy Period**  and reported to **Us** pursuant to the terms of the Policy for **Wrongful Acts** committed on or after the **Retroactive Date**. No  Deductible  shall apply to **Supplemental Payments**.

Exhibit A at Hiscox_000013.

27.     The Policy contains the following pertinent exclusion:

---

[1] Certain averments in the Underlying Second Amended Complaint are redacted as they were stricken from the Underlying Second Amended Complaint pursuant to the Court's November 20, 2025 Order [ECF No. 29].

### III.    EXCLUSIONS

This Policy does not apply to  and **We** shall have no obligation to pay any  **Damages, Claim Expenses** or **Supplemental Payments** for any **Claim**:

A.    based upon or arising out of any actual or alleged fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions; provided, however, that:

    1.    **We** will pay **Claim Expenses** until there is a final adjudication establishing such conduct, at which time **You** shall reimburse **Us** for such **Claim Expenses**; and

    2.    this exclusion shall not apply to otherwise covered intentional acts or omissions resulting in a **Personal Injury**.

Exhibit A at Hiscox_000015-Hiscox_000016.

28.    The Policy contains the following pertinent condition:

### V.    OTHER MATTERS AFFECTING COVERAGE

*** 

### B.    INSURED DUTY TO COOPERATE

**You**  shall have the duty to cooperate with **Us** in the defense, investigation and settlement of any **Claim**, including but not limited to:

    1.    upon request, submit to examination and interrogation under oath by **Our** representative;

    2.    attend hearings, depositions and trials as requested by **Us**;

    3.    assist in securing and giving evidence and obtaining the attendance of witnesses;

    4.    provide written statements to **Our** representative and meet with such representative for the purpose of investigation and/or defense; and

    5.    provide all documents **We** may reasonably require.

Exhibit A at Hiscox_000018-Hiscox_000019.

29.    The Policy contains the following pertinent definitions:

## VI.    DEFINITIONS

***

C.    **Claim** means any written demand for **Damages** or for non-monetary relief.

D.    **Claim Expenses** means the following that are incurred by **Us** or by **You** with **Our** prior written consent:

1.    all reasonable and necessary fees, costs and expenses (including the fees of attorneys   and   experts) incurred in the investigation, defense and appeal of  a **Claim**; and

2.    premiums on appeal bonds, attachment bonds or similar bond.  Provided, however, **We** shall have no obligation to apply for or furnish any such bonds.

**Claim Expenses** shall not mean and **We** shall not be obligated to pay:

1.    salaries, wages or expenses other than **Supplemental Payments**; or

2.    the defense of any criminal investigation, criminal grand jury proceeding,  or criminal action.

E.    **Damages** means a monetary judgment or monetary award that **You** are legally obligated to pay (including pre- or post-judgment interest) or a monetary settlement negotiated by **Us** with **Your** consent.

**Damages** shall not mean and **We** shall not be obligated to pay:

1.    fines, penalties, taxes, sanctions levied against **You**;

2.    any punitive or exemplary damages or that portion of any multiplied damages award which exceeds the damage award so multiplied, provided, however, that, if such damages are otherwise insurable under applicable law and regulation, **We** will pay an award of punitive or exemplary damages in excess of the Deductible and up to a maximum sum of $250,000.  This limit shall be a part of and  not  in addition to the Limit of Liability set forth in Items 3. of the Declarations;

3.    the return, reduction or restitution of **Your** fees, commissions, profits, or charges for goods  provided or  services  rendered,  including any  over-charges or  cost over-runs;

    4.     liquidated damages; or

    5.     **Your** cost of complying with injunctive relief.

***

G.    **Employee** means any past, present or future:

    1.     employee (including any part-time, seasonal or temporary employee or any volunteer);

    2.     partner, director, officer, member or board member (or equivalent position);

    3.     independent contractor; or

    4.     leased worker;

of an **Organization**, but only in their performance of **Professional Services** on behalf of or at the direction of such **Organization**.

H.    **Insured** means **You** or **Your**.

I.    **Named Insured** means the individual, corporation, partnership, limited liability company, limited partnership, or other entity set forth in Item 1 of the Declarations.

***

K.    **Organization** means the **Named Insured** and any **Subsidiary**.

L.    **Personal Injury** means injury, other than **Bodily Injury**, arising out of one of more of the following offenses:

    1.     false arrest, detention or imprisonment;

    2.     malicious prosecution;

    3.     wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of premises;

    4.     slander, libel, defamation or disparagement of goods, products or services; or

    5.     oral or written publication of material in connection with Your advertising that violates a person's right of privacy.

***

O.    **Professional Services** means only those services specified in Endorsement to this Policy as performed by or on behalf of an **Organization** for others for a fee or other compensation.

7

\*\*\*

U.    **Wrongful Act** means any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**.

V.    **You** or **Your** means any:

1.    **Organization**;
2.    **Employee**;
3.    joint venture in which an **Organization** participates pursuant to written agreement, but only for:

a.    **Wrongful Acts** committed by such **Organization**; and
b.    the percentage of otherwise covered **Damages** and **Claims Expenses** in proportion to such **Organization's** participation in the joint venture.

**You** or **Your** shall also include any **Additional Insured** but only for the **Wrongful Acts** of those contemplated in paragraphs 1., 2. or 3. of the definition of "'**You'** or '**Your'**":[2]

Hiscox_000021-Hiscox_000024.

30.    The Policy contains Endorsement 2, Technology Services/IT Consulting Services Endorsement (Software Copyright Infringement), which provides:

In consideration of the premium charged, it is understood and agreed that the Policy is amended as follows:

1.    In Clause VI. **DEFINITIONS**, paragraph O., "**Professional Services**," is amended to read as follows:

O.    **Professional Services** means **Technology Services** or Information Technology (IT) consulting services performed for others for compensation.

2.    Clause VI. **DEFINITIONS** is amended to include the following at the end thereof:

TS-A. **Technology Services** means the following:

---

[2] As amended by Endorsement E5424.1 Blanket Additional Insured Endorsement (PL). Hiscox_0000021.

1.  application service provider (ASP) services;
2.  data processing, analysis, and database design services;
3.  IT Project Management services;
4.  internet service provider (ISP) services;
5.  internet hosting services;
6.  network security design and consulting services;
7.  software installation, customization, and support;
8.  software programming and development;
9.  systems/hardware/network installation, maintenance, and support;
10. systems/network advice, design, and integration;
11. technology products training;
12. value-added resale of hardware; and
13. website design.

TS-B. **Software Copyright Infringement Claim** means any **Claim** alleging or arising out of any actual or alleged infringement of any copyright of source code or other software code.

TS-C. **Infringement Claim** means any **Claim** alleging or arising out of any actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, or slogan.

3.  In Clause VI **DEFINITIONS**, paragraph C., "**Claim**," is amended to include the following at the end thereof:

    **Claim** will also mean **Software Copyright Infringement Claim** and **Infringement Claim**.

4.  In Clause III. **EXCLUSIONS**, exclusion M. is deleted in its entirety and replaced with the following:

    M.   based upon or arising out of any actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, slogan, or patent, or theft of trade secret; provided, however, this exclusion will not apply **to Software Copyright Infringement Claims** and **Infringement Claims.**

5.  In Clause III. **EXCLUSIONS**, exclusion R is deleted in its entirety and replaced with the following:

    R.   based upon or arising out of any actual or alleged:

         1.   unauthorized acquisition, access, use, or disclosure of, improper collection or retention of, or failure to protect any non-

> public personally identifiable information or confidential corporate information that is in **Your** care, custody, or control;
>
> 2. violation of any privacy law or consumer data protection law protecting against the use, collection, or disclosure of any information about a person or any confidential corporate information; or
>
> 3. any self-replicating, malicious code that was not specifically targeted to **Your** system; however, this exclusion will not apply to any covered portion of a **Claim** for negligent transmission of a computer virus, worm, logic bomb, or Trojan horse.
>
> *** 

Hiscox_0000027-Hiscox_0000028.

### B. Underlying Action

31.    Nicholson is the only defendant in the Underlying Action.

32.    The Underlying Complaint alleges that UAC operates the Economic Development Projects ("EDP") program through which it partners with developers and owners, including hospitals, universities, and museums, to create Economic Opportunity Plans ("EOP"). Exhibit B at ¶34, HISCOX_000049.

33.    UAC alleges that it serves as a fiscal sponsor for numerous partner organizations ("program partners") located within Philadelphia and its surrounding counties, and in this role, UAC provides its program partners with comprehensive general management, financial, administrative, and human resources support. Exhibit B at ¶¶36-37, HISCOX_000049.

34.    UAC alleges that because of the competitive industry in which it operates, UAC closely guards its confidential and proprietary information. Exhibit B at ¶38 HISCOX_000049.

35.    It is alleged that UAC has achieved, and will continue to maintain, its present competitive advantage by preserving the confidential and proprietary nature of its trade secrets and confidential information including its proprietary processes, current and future business

plans, strategies for new services and expansion, customer and sales information, pricing and profitability information ("confidential and proprietary information"). Exhibit B at ¶39, HISCOX_000050.

36.     UAC alleges it has taken and continues to take great care to maintain the confidential and trade secret nature of such information by retaining an experienced IT management company, The Hierarchy, which specializes in professional IT services, and offers a broad range of services, including IT project management, network and systems integration, cloud services, and IT security. Exhibit B at ¶¶40-41, HISCOX_000050.

37.     It is alleged that UAC limits access to its confidential information to those with a business need to access it, and requires the employees and contractors it grants access to its confidential information to sign confidentiality agreements. Exhibit B at ¶42, HISCOX_000050.

38.     UAC alleges that if its confidential and proprietary information were to become available to a competitor or become public knowledge, UAC's competitive advantage and the substantial investment made by UAC in developing and maintaining its trade secrets and confidential information would be irreparably injured and/or destroyed. Exhibit B at ¶43, HISCOX_000050.

39.     UAC alleges that from January 2009 through September 2021, it hosted its confidential and proprietary information on its secure servers located at 1207 Chestnut Street, Philadelphia, PA. Exhibit B at ¶¶44-45, HISCOX_000050.

40.     In October 2021, UAC decided it wanted to move away from hosting its confidential and proprietary information on secure servers located on site to hosting this confidential and proprietary information in a NetSuite cloud, which would provide greater security, and hired The Hierarchy to complete this data migration. Exhibit B at ¶¶46-48, HISCOX_000051.

41.    UAC alleges that in early-November 2021, "The Hierarchy retained 'Karen Nicholson' a.k.a. Karen Sue Reynolds as a Structured Query Language ('SQL') Professional to assist with this project." Exhibit B at ¶49, HISCOX_000051.

42.    It is alleged that The Hierarchy and Nicholson agreed she would work for the Hierarchy as an independent contractor on a temporary basis until The Hierarchy completed UAC's data migration. Exhibit B at ¶51, HISCOX_000051.

43.    To ensure UAC's confidential and proprietary information remained protected and Nicholson did not misappropriate it, it is alleged that The Hierarchy made Nicholson sign a non-disclosure/confidentiality agreement[3] ("the Agreement") before granting her access to UAC's confidential and proprietary information, which required Nicholson to keep UAC's confidential and proprietary information confidential, not share it with third parties, and not download or keep this information once her work with The Hierarchy ended. A copy of the Agreement is attached to the Underlying Complaint as Exhibit "H". Exhibit B at ¶¶52-53, HISCOX_000051-HISCOX_000052.

44.    It is alleged that on November 3, 2021, Nicholson signed and returned the Agreement via email, and provided The Hierarchy with her W-9, a copy of her Pennsylvania driver's license, and her banking information. Exhibit B at ¶55, HISCOX_000052.

45.    Shortly thereafter, The Hierarchy allegedly granted Nicholson access to UAC's confidential and proprietary information, which it hosted in Philadelphia, PA via Neutrality's secure data facility that contained its cloud environment ("secure cloud environment"). Exhibit B at ¶56, HISCOX_000052.

46.    It is alleged that over the next twenty-one months, from November 2021 to

---

[3] The Agreement contains a choice of law provision stating the Agreement would be interpreted under the laws of the Commonwealth of Pennsylvania, and a forum selection clause stating any dispute arising under or in connection with this agreement shall be subject to the exclusive jurisdiction of the state and/or federal courts located in Chester County, Pennsylvania (i.e., EDPA). Exhibit B at ¶54.

August 2023, Nicholson worked on UAC's data migration and accessed UAC's confidential and proprietary information via The Hierarchy's Philadelphia-based secure cloud environment hundreds of times and The Hierarchy compensated Nicholson with funds it transferred from its Pennsylvania bank account. Exhibit B at ¶¶57-60, HISCOX_000052-HISCOX_000053.

47. It is alleged that when The Hierarchy terminated Nicholson's contract in August 2023, it disabled her access to UAC's confidential and proprietary information, and reminded her of her ongoing obligations under the Agreement she signed in November 2021. Exhibit B at ¶61, HISCOX_000053.

48. Despite this reminder, it is alleged that Nicholson kept UAC's confidential and proprietary information in direct violation of the terms of the Agreement. Exhibit B at ¶62, HISCOX_000053.

49. Specifically, it is alleged that Nicholson downloaded a copy of UAC's confidential and proprietary information from The Hierarchy's secure cloud environment located in Philadelphia, PA, to her computer in violation of the Agreement, and state and federal law. Exhibit B at ¶63, HISCOX_000053.

50. It is further alleged that Nicholson refuses to return UAC's confidential and proprietary information despite UAC requesting she return this information. Exhibit B at ¶64, HISCOX_000053.

51. It is alleged that in September 2023, Nicholson filed a Charge of Discrimination ("Charge") against The Hierarchy with the Equal Employment Opportunity Commission's Philadelphia Office ("EEOC-Philadelphia"), alleging that The Hierarchy subjected Nicholson to retaliation, reverse race, sex, and disability discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), which was subsequently dismissed, and no further suit was filed. Exhibit B at ¶¶65-69, HISCOX_000053-54.

52.     It is alleged that Nicholson next filed a Charge against UAC with the EEOC-Philadelphia and allegedly falsely claimed Nicholson worked for UAC, and that UAC subjected her to retaliation, reverse race discrimination, age discrimination, and gender discrimination in violation of Title VII and Age Discrimination in Employment Act ("ADEA"), which was dismissed, and no further suit was filed. Exhibit B at ¶¶70-74, HISCOX_000054.

53.     It is alleged that in January 2025, Nicholson published a website entitled https://the-hierarchy.net, of which she is the sole owner and operator. Exhibit B at ¶¶75-76, HISCOX_000055.

54.     UAC alleges that in March 2025, Nicholson inadvertently admitted on the website that she misappropriated UAC's confidential and proprietary information in two ways: (1) she admitted on her website that she kept over 1,000 emails from UAC management;[4] and (2) she published  numerous snippets of UAC's confidential and proprietary information on her website, including snippets of include current EDP business plans, pricing and profitability information, strategies for new services and expansion, and proposals. Exhibit B at ¶¶78-80, HISCOX_000055-56.

55.     It is alleged that despite receiving notification that UAC discovered Nicholson's misappropriation of its confidential and proprietary information, Nicholson refuses to allow a forensic examination of her computer and electronic data storage devices and cloud accounts to  remove UAC's information. Exhibit B at ¶85, HISCOX_000056.

56.     UAC alleges that around the same time, Nicholson began a public smear campaign of Underlying Plaintiffs purposely directed at the Commonwealth of Pennsylvania,

---

[4] It is alleged that members of UAC's management frequently exchange emails that include UAC's trade secrets and confidential information, including customer lists, standard operating procedures, protocols, and data associated with EDP, UAC's strategies and techniques to market EDP, data regarding UAC's EDP customers including market data, preferences, contacts, spending history, confidential sales history, strategies to compete in the marketplace, know-how, and negative know- how. These emails are valuable because they are secret.  If a competitor had access to them, the competitor could replicate UAC's operations and projects, undercutting UAC's positioning in the market. Exhibit B at ¶79, HISCOX_000055.

its citizens, and its government through numerous calculated attempts to cause harm to Underlying Plaintiffs in the Commonwealth. Exhibit B at ¶¶87-88, HISCOX_000057.

57. It is alleged that at all relevant times, Nicholson knew the emotional, reputational, employment and privacy-related injuries she was intentionally causing to Underlying Plaintiffs would be felt by them in the Commonwealth yet she disregarded the truth and published numerous false statements about Underlying Plaintiffs between March and August 2025 calculated to cause injury to them. Exhibit B at ¶¶89-90, HISCOX_000057.

58. Allegedly, Nicholson continued to publish factually inaccurate defamatory statements about Underlying Plaintiffs in April 2025, including that Satterthwaite, UAC's Chief Administrative Officer, allowed a con artist to bill for hours he never worked, and participated in this con artist's theft. Exhibit B at ¶¶92-93, HISCOX_000058.

59. It is alleged that Nicholson falsely claimed that Prabhakaran, UAC's President, allowed The Hierarchy to embezzle taxpayers' funds. Exhibit B at ¶94, HISCOX_000059.

60. It is further alleged that Nicholson published a meme of Matlock-Turner, UAC's CEO, falsely claiming she could explain how to get paid for ghost hours and steal paychecks. Exhibit B at ¶95, HISCOX_000059.

61. The Underlying Complaint alleges that Nicholson spoke with writers for local Philadelphia news publications in early and mid-April 2025 and accused UAC of embezzling funds, money laundering, owing her over $200,000, and accused Satterthwaite of tax fraud. Exhibit B at ¶¶96-102, HISCOX_000059-60.

62. It is further alleged that in May 2025, Nicholson used Facebook and directed online posts at Underlying Plaintiffs under an alias. Exhibit B at ¶¶103-111, HISCOX_000060-62.

63. Finally, it is alleged that Nicholson posted snippets of UAC's original complaint in the Underlying Action on her website and continued to publish additional defamatory

15

statements about UAC. Exhibit B at ¶¶112-24, HISCOX_000062-66.

64.    Count I of the Underlying Complaint alleges a cause of action for Misappropriation of Trade Secrets in violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. 5301 et seq., by UAC against Nicholson.  Exhibit B at ¶¶125-32, HISCOX_000066-67.

65.    Count II of the Underlying Complaint alleges a cause of action for Misappropriation of Trade Secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. 1831, et seq., by UAC against Nicholson.  Exhibit B at ¶¶133-40, HISCOX_000067-68.

66.    Count III of the Underlying Complaint alleges a cause of action for Defamation *Per Se* by UAC, Prabhakaran, Matlock-Turner, and Satterthwaite against Nicholson. Exhibit B at ¶¶141-48, HISCOX_000068-69.

67.    Count IV of the Underlying Complaint alleges a cause of action for False Light Invasion of Privacy by UAC, Prabhakaran, Matlock-Turner, and Satterthwaite against Nicholson. Exhibit B at ¶¶149-54, HISCOX_000069-70.

68.    Count V of the Underlying Complaint alleges a cause of action for Conversion by UAC against Nicholson. Exhibit B at ¶¶155-60, HISCOX_000070.

69.    Underlying Plaintiffs demand damages in excess of $150,000; punitive or exemplary damages; injunctions from using any confidential and/or proprietary information of UAC; injunctions from disparaging Underlying Plaintiffs; removal/deletion of defamatory information; attorneys fees and costs. Exhibit B, HISCOX_000071-72.

**C.  Nicholson's Breach of the Duty to Cooperate**

70.    Until April 14, 2026, Hiscox was providing Nicholson with a defense and assigned counsel to protect Nicholson's interests in the Underlying Action.

71.    Nicholson has failed to cooperate with Hiscox and appointed defense counsel in the Underlying Action.

72.    Recently, Nicholson has refused to directly communicate with defense counsel or anyone from defense counsel's office.

73.    On April 3, 2026, appointed defense counsel for Nicholson filed a motion to withdraw as counsel due to Nicholson's failure to cooperate in her own defense. A copy of the Motion is attached hereto as Exhibit D.[5]

74.    Nicholson's failure to cooperate in her own defense has resulted in prejudice to Hiscox.

**REQUEST FOR DECLARATORY RELIEF**

**COUNT I**
**Insuring Agreement Not Satisfied**

75.     Hiscox incorporates herein by reference the allegations set forth in paragraphs 1 through 74 inclusive, as if the same were fully set forth at length.

76.    The Insuring Agreement of the Policy provides, in pertinent part:

> **We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the Policy for **Wrongful Acts** committed on or after the **Retroactive Date**.

Exhibit A at Hiscox_000013.

77.    The Policy defines **Wrongful Acts** as "**Personal Injury** committed by **You** in the performance of **Your Professional Services**." Exhibit A at Hiscox_000024.

78.    The Policy defines **Your Professional Services** as "**Technology Services** or Information Technology (IT) consulting services performed for others for compensation. Exhibit A at Hiscox_000027.

79.    **Technology Services** means the following:

1. application service provider (ASP) services;
2. data processing, analysis, and database design services;
3. IT Project Management services;

---

[5] The motion to withdraw is pending as of the date of the filing of this Complaint.

4. internet service provider (ISP) services;
5. internet hosting services;
6. network security design and consulting services;
7. software installation, customization, and support;
8. software programming and development;
9. systems/hardware/network installation, maintenance, and support;
10. systems/network advice, design, and integration;
11. technology products training;
12. value-added resale of hardware; and
13. website design.

Exhibit A at Hiscox_000027.

80. The Underlying Action alleges that Nicholson was hired by The Hierarchy to assist with UAC's data migration in November 2021 as an SQL Professional and was terminated in early August of 2023. Exhibit B at ¶60, HISCOX_000053.

81. The Underlying Action further alleges that following Nicholson's termination, she improperly retained UAC's confidential and proprietary information, refused to return such information, and, in 2025, created a website through which she revealed she had misappropriated UAC's confidential and proprietary information and defamed the Underlying Plaintiffs. Exhibit B at ¶¶61-64; 75-80, HISCOX_000053; HISCOX_000055.

82. The Underlying Action is based on Nicholson's actions that occurred after Nicholson had been terminated by The Hierarchy. *See, generally* Exhibit B.

83. Accordingly, there are no allegations that Nicholson committed any acts in the performance of "**Professional Services**" as that term is defined in the Policy such that there are no alleged "**Wrongful Acts**" as that term is defined in the Policy.

84. Therefore, the Insuring Agreement of the Policy is not satisfied and there is no coverage for the causes of action alleged against Nicholson in the Underlying Action.

85. Because the Insuring Agreement of the Policy is not satisfied, Hiscox has no duty to defend Nicholson for the causes of action asserted against her in the Underlying Action.

86.     Moreover, because Hiscox has no duty to defend Nicholson for the causes of action asserted against her in the Underlying Action, Hiscox has no duty to indemnify Nicholson for the causes of action asserted against her in the Underlying Action as a matter of law.

WHEREFORE, Hiscox seeks a declaration that it does not have a duty to defend or indemnify Nicholson under the Policy in connection with the causes of action asserted against her in the Underlying Action.

**COUNT II**
**NICHOLSON IS NOT AN INSURED**

87.     Hiscox incorporates herein by reference the allegations set forth in paragraphs 1 through 86 inclusive, as if the same were fully set forth at length.

88.     The Policy potentially provides coverage to "**You**" or "**Your**", which means, in pertinent part, any "**Organization**" or "**Employee**." Exhibit A at HISCOX_000024.

89.     The term "**Organization**" means "the **Named Insured** and any **Subsidiary**." Exhibit A at HISCOX_000023.

90.     The term "**Employee**" means any past, present or future:

1.      employee (including any part-time, seasonal or temporary employee or any volunteer);
2.      partner, director, officer, member or board member (or equivalent position);
3.      independent contractor; or
4.      leased worker;

of an **Organization**, but only in their performance of **Professional Services** on behalf of or at the direction of such **Organization**."

Exhibit A at Hiscox_000022.

91.     The Declarations name MarkXX Consulting LLC as the "**Named Insured**" under the Policy. Exhibit A at HISCOX_000008.

92.     MarkXX Consulting LLC is not a defendant in the Underlying Action. *See*

Exhibit B.

93.     There are no allegations involving MarkXX Consulting in the Underlying Action. *See*, *generally*, Exhibit B.

94.     Rather, the Underlying Action alleges that Nicholson was hired by The Hierarchy to assist with UAC's data migration and the Agreement was signed by Nicholson. Exhibit B at ¶¶49-55, HISCOX_000051-52.

95.     Additionally, the allegations against Nicholson in the Underlying Action are based on her actions after her contract with The Hierarchy was terminated. *See,* Exhibit B.

96.     Nicholson was not performing "**Professional Services**" on behalf of or at the direction of MarkXX Consulting when she misappropriated trade secrets and defamed the underlying plaintiffs.

97.     Accordingly, Nicholson does not qualify as an "**Employee**" of MarkXX Consulting in connection with the allegations of the Underlying Complaint.

98.     Therefore, Nicholson does not qualify as an "**Insured**" under the Policy.

99.     Because Nicholson does not qualify as an "**Insured**" under the Policy, Hiscox has no duty to defend Nicholson under the Policy for the causes of action asserted against her in the Underlying Action.

100.     Moreover, because Hiscox has no duty to defend Nicholson for the causes of action asserted against her in the Underlying Action, Hiscox has no duty to indemnify Nicholson for the causes of action asserted against her in the Underlying Action as a matter of law.

WHEREFORE, Hiscox seeks a declaration that it does not have a duty to defend or indemnify Nicholson under the Policy in connection with the causes of action asserted against her in the Underlying Action.

## COUNT III
## INTENTIONAL ACTS EXCLUSION

101.    Hiscox incorporates herein by reference the allegations set forth in paragraphs 1 through 100 inclusive, as if the same were fully set forth at length.

102.    The Policy contains Exclusion A., which excludes coverage for any Claim "based upon or arising out of an actual or alleged fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions" ("Intentional Acts Exclusion"). Exhibit A at HISCOX_000015-16.

103.    The Intentional Acts Exclusion further provides that Hiscox "will pay **Claim Expenses** until there is a final adjudication establishing such conduct, at which time, **You** shall reimburse **Us** for such **Claim Expenses**…." Exhibit A at HISCOX_000015.

104.    The Underlying Action alleges that Nicholson knowingly, dishonestly, and intentionally used UAC's trade secrets, confidential information, and other property without authorization, and has refused to return UAC's confidential and proprietary information despite repeated requests. Exhibit B at ¶¶75-86, HISCOX_000055-57.

105.    Therefore, the allegations against Nicholson are excluded from coverage pursuant to the Intentional Acts Exclusion.

106.    Because the Intentional Acts Exclusion operates to exclude coverage for the causes of action asserted against Nicholson in the Underlying Action, Hiscox has no duty to defend Nicholson in the Underlying Action.

107.    Moreover, because Hiscox has no duty to defend Nicholson for the causes of action asserted against her in the Underlying Action, Hiscox has no duty to indemnify Nicholson for the causes of action asserted against her in the Underlying Action as a matter of law.

WHEREFORE, Hiscox seeks a declaration that it does not have a duty to defend or indemnify Nicholson under the Policy in connection with the causes of action asserted against her in the Underlying Action.

## COUNT IV
## THEFT OF TRADE SECRET EXCLUSION

108. Hiscox incorporates herein by reference the allegations set forth in paragraphs 1 through 107 inclusive, as if the same were fully set forth at length.

109. The Policy contains Exclusion M. which excludes coverage for any Claim "based upon or arising out of any actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, slogan, or patent, or theft of trade secret; provided, however, this exclusion will not apply to Software Copyright Infringement Claims and Infringement Claims" ("Theft of Trade Secrets Exclusion"). Exhibit A at HISCOX_000027.

110. The Underlying Action alleges that Nicholson took UAC's confidential and proprietary information and has failed to return the information despite several requests. Exhibit B at ¶64, HISCOX _000027.

111. These allegations are excluded from coverage pursuant to Theft of Trade Secrets Exclusion.

112. Because the Theft of Trade Secrets Exclusion operates to exclude coverage for the causes of action asserted against Nicholson in the Underlying Action, Hiscox has no duty to defend Nicholson in the Underlying Action.

113. Moreover, because Hiscox has no duty to defend Nicholson for the causes of action asserted against her in the Underlying Action, Hiscox has no duty to indemnify Nicholson for the causes of action asserted against her in the Underlying Action as a matter of law.

WHEREFORE, Hiscox seeks a declaration that it does not have a duty to defend or indemnify Nicholson under the Policy in connection with the causes of action asserted against her in the Underlying Action.

## COUNT V

**UNAUTHORIZED ACCESS EXCLUSION**

114.    Hiscox incorporates herein by reference the allegations set forth in paragraphs 1 through 113 inclusive, as if the same were fully set forth at length.

115.    The Policy contains Exclusion R. which excludes coverage for any Claim "based upon or arising out of any actual or alleged: 1. unauthorized acquisition, access, use, or disclosure of, improper collection or retention of, or failure to protect any non-public personally identifiable information or confidential corporate information that is in **Your** care, custody, or control" ("Unauthorized Access Exclusion"). Exhibit A at HISCOX_000027.

116.    The Underlying Action alleges that Nicholson misappropriated UAC's confidential and proprietary information and has failed to return the information despite several requests. Exhibit B at ¶¶60-64, HISCOX_000053.

117.    These allegations are excluded from coverage pursuant to the Unauthorized Access Exclusion.

118.    Because the Unauthorized Access Exclusion operates to exclude coverage for the causes of action asserted against Nicholson in the Underlying Action, Hiscox has no duty to defend Nicholson in the Underlying Action.

119.    Moreover, because Hiscox has no duty to defend Nicholson for the causes of action asserted against her in the Underlying Action, Hiscox has no duty to indemnify Nicholson for the causes of action asserted against her in the Underlying Action as a matter of law.

WHEREFORE, Hiscox seeks a declaration that it does not have a duty to defend or indemnify Nicholson under the Policy for the causes of action asserted against her in the Underlying Action.

**COUNT VI**
**DAMAGES**

23

120. Hiscox incorporates herein by reference the allegations set forth in paragraphs 1 through 119 inclusive, as if the same were fully set forth at length.

121. In addition to monetary damages, the Underlying Action seeks punitive damages, exemplary damages, and equitable relief. *See* Exhibit B.

122. The Policy defines "**Damages**" as "a monetary judgment or monetary award that **You** are legally obligated to pay (including pre- or post-judgment interest) or a monetary settlement negotiated by **Us** with **Your** consent." Exhibit A at HISCOX_000022.

123. The Policy further provides that "**Damages**" does not include, and Hiscox will not be obligated to pay, fines, penalties, taxes, sanctions levied against **You**; any punitive or exemplary damages or that portion of any multiplied damages award which exceeds the damage award so multiplied, provided, however, that, if such damages are otherwise insurable under applicable law and regulation, **We** will pay an award of punitive or exemplary damages in excess of the Deductible and up to a maximum sum of $250,000. This limit shall be a part of and not in addition to the Limit of Liability set forth in Items 3. of the Declarations; the return, reduction or restitution of **Your** fees, commissions, profits, or charges for goods provided or services rendered, including any over-charges or cost over-runs; liquidated damages; or **Your** cost of complying with injunctive relief. Exhibit A at HISCOX_000022.

124. The Underlying Action requests various forms of relief, including several injunctions against Nicholson, the production of Nicholson's devices, the removal of offending posts on Nicholson's website, and punitive or exemplary damages. *See* Exhibit B.

125. To the extent these damages do not qualify as "**Damages**" under the Policy, coverage is precluded.

126. Therefore, Hiscox has no duty to defend Nicholson for causes of action in the Underlying Action seeking these damages.

127.    Moreover, because Hiscox has no duty to defend Nicholson for claims seeking these damages in the Underlying Action, Hiscox has no duty to indemnify Nicholson for such claims in the Underlying Action as a matter of law.

WHEREFORE, Hiscox seeks a declaration that it does not have a duty to defend or indemnify Nicholson under the Policy in connection with the claims for punitive damages, exemplary damages, and/or equitable relief asserted against her in the Underlying Action.

## COUNT VII
## BREACH OF THE DUTY TO COOPERATE

128.    Hiscox incorporates herein by reference the allegations set forth in Paragraphs 1 through 127 inclusive, as if the same were fully set forth at length.

129.    The Policy contains Condition V. Other Matters Affecting Coverage B. Insured Duty to Cooperate, which provides that "**You** shall have the duty to cooperate with **Us** in the defense, investigation and settlement of any **Claim**, including but not limited to: 1. upon request, submit to examination and interrogation under oath by **Our** representative; 2. attend hearings, depositions and trials as requested by **Us**; 3. assist in securing and giving evidence and obtaining the attendance of witnesses; 4. provide written statements to **Our** representative and meet with such representative for the purpose of investigation and/or defense; and 5. provide all documents **We** may reasonably require" ("Duty to Cooperate Condition"). Exhibit A at HISCOX_000018-19.

130.    Hiscox appointed defense counsel to represent Nicholson in connection with the Underlying Action.

131.    Nicholson stopped cooperating with appointed defense counsel resulting in defense counsel filing a motion to withdraw as counsel on April 3, 2026. *See* Exhibit D.

132.    Irreconcilable differences in handling the defense of this matter have arisen between Nicholson and defense counsel. *See* Exhibit D.

133.    Nicholson has refused to directly communicate with defense counsel, which

has made defense counsel's representation impossible. *See* Exhibit D.

134.    Defense counsel advised Nicholson on several occasions that Nicholson's continued failure to cooperate would result in a request to withdraw representation. *See* Exhibit D.

135.    Because Nicholson breached the Policy's Duty to Cooperate Condition by failing to cooperate with defense counsel and Hiscox, Hiscox is prejudiced in its ability to provide a defense to Nicholson in connection with the Underlying Action.

136.    Therefore, Hiscox withdrew its defense of Nicholson pursuant to correspondence dated April 14, 2026. *See* Exhibit C.

137.    Because Nicholson breached the Policy's Duty to Cooperate Condition, Hiscox has no duty to defend Nicholson in connection with the causes of action asserted against her in the Underlying Action.

138.    Moreover, because Hiscox has no duty to defend Nicholson for the causes of action against her in the Underlying Action, Hiscox has no duty to indemnify Nicholson for the causes of action in the Underlying Action as a matter of law.

WHEREFORE, Hiscox seeks a declaration that it does not have a duty to defend or indemnify Nicholson under the Policy in connection with the causes of action asserted against her in the Underlying Action.

## REQUEST FOR DECLARATORY RELIEF

139.    Hiscox incorporates herein by reference the allegations set forth in Paragraphs 1 through 138 inclusive, as if the same were fully set forth at length.

140.    An actual and justiciable controversy exists concerning the rights and obligations of the parties under the Policy at issue with respect to the Underlying Action.

141.    All parties have a claim or interest in the outcome of the declaratory relief sought by this action.

26

142.    Hiscox is entitled to a declaration that it is under no obligation to defend Nicholson in connection with the causes of action asserted against her in the Underlying Action.

143.    Hiscox is further entitled to a declaration that it is under no obligation to indemnify Nicholson in connection with the causes of action asserted against her in the Underlying Action as a matter of law.

WHEREFORE, Plaintiff, Hiscox Insurance Company, Inc. demands judgment as follows:

a.    A declaratory judgment that Hiscox does not have a duty to defend Nicholson under the Policy with regard to the causes of action asserted against her in the Underlying Action;

b.    A declaratory judgment that because Hiscox has no duty to defend Nicholson, Hiscox does not have a duty to indemnify Nicholson under the Policy with regard to the causes of action asserted against her in the Underlying Action; and

c.    Such other further relief as this Court deems just and proper.

Respectfully Submitted,

**KENNEDYS CMK, LLP**

Dated: June 2, 2026                    BY:    *s/ Elizabeth A. Sutton*
Elizabeth A. Sutton, Esquire (PA205904)
Rachel Rosenzweig, Esquire (PA309290)
1600 Market Street, Suite 1410
Philadelphia, PA 19103
(267) 479-6700
(215) 665-8475 (fax)

*Attorneys for Plaintiff,*
*Hiscox Insurance Company, Inc.*